UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:02CR236 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| ELIE F. ABBOUD | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Sixth Circuit remanded this matter for a second resentencing.  *See U.S. v. Abboud*,

308 Fed. Appx. 977 (6th Cir. 2009).  The Court notes that in examining the issues raised on

appeal, the Circuit found that this Court had properly calculated the advisory guidelines for Elie

Abboud's convictions.[1]

> Defendant Elie Abboud raises the same objections to the district court's calculation
> of his offense level as Michel Abboud.   For the same reasons, the district court did
> not err in determining that Defendant had an offense level of 30. As Defendant has
> raised no objections with his Criminal History Category, the district court did not
> err in determining that Defendant's advisory Guidelines range was 97 to 121
> months.

*Id.* at 983.   Following remand, this Court accepted briefing from the parties on the applicability of

the U.S. Supreme Court's decision in *U.S. v. Santos*, 128 S.Ct. 2020 (2008).   On May 28, 2009,

this Court found *Santos* to be inapplicable.   Doc. 415.   The Court's prior analysis is hereby

---

1 For clarity, the Court will refer to Defendant Elie Abboud by his full name throughout this opinion.

incorporated herein.   Following that determination, the Court set the matter for resentencing and a

hearing was held on July 21, 2009.   During that hearing, Elie Abboud was sentenced to an

aggregate sentence of 97 months incarceration.   This memorandum will serve to supplement the

Court's oral statements in support of its sentence.

## I. Advisory Guidelines

As noted above, the Sixth Circuit found that this Court properly calculated the advisory

guideline range for Elie Abboud. The matter was remanded due to the Court's consideration of

improper factor when reviewing the § 3553(a) factors.

While filing a lengthy sentencing memorandum, Elie Abboud raised no new challenge to

the advisory guideline calculation.   The Court previously rejected his contentions that *Santos*

altered the Court's calculation.   As the Circuit has previously affirmed this Court's calculation, it

hereby issues the same calculation.   Elie Abboud's offense level is found to be 30 and his criminal

history category is I.   Accordingly, the advisory range for his offenses is 97 to 121 months.

## II. Departure

Elie Abboud's argument for a departure is not well taken.   In his argument, the defendant

relies upon the fact that he used the proceeds from his illegal activities to run a legitimate business

and that the banks at issue suffered no loss.   Effectively, Elie Abboud is once more challenging

his guilt on the underlying charges.   Neither of the arguments raised, however, serve as a proper

or sufficient basis for a downward departure.   The Court, therefore, declines to exercise its

discretion and depart downward.

## III. § 3553 Factors and Variance

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its

judgment to determine a sentence that is sufficient, but not greater than necessary to achieve the

goals of sentencing.   In reaching its conclusion, the Court must consider the nature and

circumstances of the offense and the history and characteristics of the defendant.   The Court must

also review the need for the sentence imposed: a) to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense; and b) to afford

adequate deterrence to criminal conduct and to protect the public from further crimes of the

Defendant.

The Sixth Circuit has previously summarized the nature and circumstances of Elie

Abboud's convictions:

> Defendants are brothers who owned various "corner stores" that sold groceries and
> money orders, and offered check cashing services. Defendants controlled seven or
> eight bank accounts. At the end of each day, Defendants would take checks drawn
> from one of their own bank accounts, along with checks received from their
> customers, and deposit them in a second bank account controlled by Defendants.
> The checks that were drawn from Defendants' own bank accounts would not have
> sufficient funds to cover the check. The next day, Defendants would deposit a
> check from a third bank account they controlled to cover the deficit in the second
> bank account. This check would also be drawn from a bank account with
> insufficient funds to cover the check.
>
> Defendants were informed by their banks of their negative account balances.
> Defendants were also informed that they were engaged in check kiting, and that
> such conduct was illegal. "Check kiting is a systematic scheme to defraud, whereby
> nonsufficient checks are traded or cross deposited between two or more checking
> accounts in order to artificially inflate the bank account balances." *United States v.
> Abboud*, 438 F.3d 554, 563 n. 1 (6th Cir. 2006). "Once bank accounts are
> artificially inflated, checks that would normally be returned for insufficient funds
> are, in fact, paid or honored by the issuing bank."   *Id*. The check kiting scheme was
> the basis for Defendants' indictment for bank fraud.
>
> The money laundering charges stemmed from Defendants "bleeding" the kite. In
> other words, Defendants used their artificially inflated bank account balances
> created by the kiting to obtain cash for their check cashing business, make loan
> payments, and fund their money order account.

*Abboud*, 308 Fed. Appx. at 979.   Furthermore, the Court adopts the detailed review of the

Abbouds' criminal scheme contained in the first appellate decision in this matter, *U.S. v. Abboud*,

438 F.3d 554 (6th Cir. 2006).

There is simply no question that between July and September of 1999, Elie and Michel Abboud engaged in a wide-ranging check kiting scheme. During the scheme, over 2500 checks in an amount approaching $385 million were written. The defendants used the scheme to effectively offer themselves an interest-free loan to run their businesses. In so doing, they defrauded four different banks by using sixteen different accounts.

With respect to the characteristics of the defendant, the Court notes that Elie Abboud has no prior criminal history. At the time of this resentencing, Elie Abboud was 56 years old with a wife and five children. The defendant is well-educated, having received his Phd. (all but dissertation) in biomedical engineering. The defendant built a substantial business enterprise, employing many members of his family. In addition, he founded and headed a national organization for the advancement of Arab American business interests. The Court has taken into consideration these positive aspects of Elie's past.

Elie Abboud has argued that the §3553 factors warrant a downward variance. The Court disagrees.

First, the scope of the check kiting scheme was massive, warranting a guideline range sentence. Furthermore, the Court finds no merit in the specific arguments raised. Second, the fact that restitution has been paid does not warrant a downward variance.

> The record shows that the district court clearly recognized that while the defendants' voluntary restitution was commendable, it did not change the fact that a crime had been perpetrated, that the bank had indeed suffered a loss, and that we do not operate under a system that unfairly rewards financially able defendants who voluntarily make restitution after they are caught. The defendants' restitution was considered for a downward departure of two points for acceptance of responsibility, which the district court approved, and they were sentenced at the low end of the Guidelines range. There is no support in the Guidelines or case law for giving double credit for restitution; thus, the district court did not err in sentencing these defendants.

*U.S. v. Fisher*, 55 F.3d 218, 222 (6th Cir. 1995).   Similarly, the first appeal in this matter resulted

in the following commentary from the Circuit:

> Defendants also claim that after the banks discovered the kite, Defendants were
> fully cooperative with the banks, paid timely payments, and repaid the kited funds.
> While this may be true, this does not relieve Defendants of criminal liability.

*Abboud*, 438 F.3d at 594.   Consistent with the above precedent, the Court considered payment of

the restitution when considering Elie Abboud's possible acceptance of responsibility.   The Court,

however, declines to find acceptance of responsibility.

During his statement to the Court, Elie Abboud made several comments that reflect his

failure to accept responsibility for his actions.   The defendant denied knowledge of the illegality

of his conduct.  However, early on in this scheme, Elie Abboud was placed on notice of the

possibility of the illegality of his conduct.   Rather than heed this advice, Elie instead made his

scheme more complex to hide his activities.   Furthermore, Elie Abboud to this day continues to

contend that he had no intention to defraud the banks at issue, effectively asserting his innocence.

Finally, Elie has continued to insist that the Government's allegations are simply wrong on

numerous fronts.   He has refused to acknowledge the risk of loss his conduct posed to the banks at

issue.   Accordingly, the Court has considered the fact that Elie made voluntary restitution when

reaching its sentence, but declines to award acceptance of responsibility, vary, or depart based on

that fact.

With respect to the latter issue above, Elie Abboud has argued that his accounts were fully

collateralized and thus there was never a risk of loss to the banks.   The Court finds no merit in this

contention.   The accounts that were subject to the kiting scheme were not collateralized.   The

fact that other accounts contained collateral does little to offset a risk of loss.   Furthermore, the

risk of loss created by the scheme greatly exceeded the collateral available for all of the accounts.

Accordingly, the Court rejects the arguments raised by Elie that his sentence should be reduced due to the existence of collateral.

Based upon the above, the Court finds that a sentence at the low-end of the advisory guideline is appropriate.  The convictions involve a large scheme that affected four different banks and lasted over several months.  Furthermore, Elie Abboud has never accepted responsibility for the full extent of his criminal wrongdoings.  However, Elie Abboud has lived a productive, law-abiding life outside the conduct at issue.  Furthermore, he has made full restitution to the victims.  Accordingly, a low-end sentence is appropriate.

Consistent with its oral order, Elie Abboud is sentenced to 97 months on Counts 1 through 6, 8 through 27, 29 through 61, and 64 through 72.  Defendant is sentenced to 60 months on Counts 28 and 73, and 12 months on Counts 76 and 77.  All counts are to be served concurrently for a total sentence of 97 months.  The remaining terms of the sentence were set forth on the record and will not be reiterated herein.

IT IS SO ORDERED.


August 24, 2009                          /s/ John R. Adams
                                         JUDGE JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE